IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| MIA A. BIRD, | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | |
| v. | : | |
| | : | |
| AMERICAN BREAD COMPANY, LLC d/b/a | : | |
| PANERA BREAD, | : | |
| Defendant | : | NO. 11-4596 |

_____

| MIA A. BIRD, | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | |
| v. | : | |
| | : | |
| AMERICAN BREAD COMPANY, LLC d/b/a | : | |
| PANERA BREAD, | : | |
| Defendant | : | NO. 12-727 |

_____

**MEMORANDUM OPINION AND ORDER**

**Rufe, J.**                                                                                                                **August 24, 2012**

Plaintiff, Mia Bird, filed two lawsuits against her former employer, American Bread Company, LLC. The first suit alleges claims for harassment and discrimination based on race and sex and for retaliatory discipline, and the second suit alleges retaliatory discharge. Defendant has moved to compel mediation and arbitration or, in the alternative, for partial dismissal, and to consolidate and stay the actions. Plaintiff opposes the motions to compel mediation and arbitration of the disputes, but does not oppose consolidation or the alternative motion for dismissal of certain claims.

**I.      BACKGROUND**

When she began her employment with Defendant in October 2008, Plaintiff signed a two-page "Agreement and Receipt for Dispute Resolution Program" (the "Agreement").[1]  The Agreement provides that "all legal claims or disputes covered by the Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive final remedy for resolving any such claim or dispute."[2]  Claims covered by the Agreement include in relevant part:

> claims for wages or other compensation; claims for breach of any contract . . . tort claims (including but not limited to, claims for physical mental or psychological injury but excluding statutory workers compensation claims); claims for wrongful termination (including, but not limited to, retaliatory discharge claims); sexual harassment; discrimination (including, but not limited to, claims based on race, sex, sexual orientation, religion, national origin, age, medical condition or disability whether under federal, state or local law); . . . and claims for retaliation under any law, statute, regulation or ordinance, including retaliation under any workers compensation law or regulation.[3]

By its terms, "[t]his Agreement to arbitrate shall survive the termination of [Plaintiff's] employment."[4]  The Agreement references the Dispute Resolution Program ("Program"), which provides for a four-step process of dispute resolution:  communication with supervisors and management; executive review through the corporate human resources department; mediation with an independent mediator; and arbitration under the auspices of the American Arbitration

---

[1] Def.'s Ex. A-2 at 1 (Civ. A. No. 11-4596, Doc. No. 2-1).

[2] Def.'s Ex. A-2 at 1.

[3] Def.'s Ex. A-2 at 1.

[4] Def.'s Ex. A-2 at 2.

Association ("AAA").[5]  According to the Program, a party seeking arbitration must file a request for arbitration form and "give written notice of any claim to the other party within one year or within the applicable statute of limitations, whichever is longer."[6]

Plaintiff does not dispute that she signed the Agreement; in her first Complaint, Plaintiff alleges that on November 21, 2009, she sought to "'revoke, dissolve, and remove' the [Agreement] signed by her and the Employer and sought to 'revoke, dissolve and remove' any mutual consent of the [Agreement]."[7]  This Complaint alleges that Defendant declined to alter or terminate the Program, and Plaintiff then initiated paperwork for the executive review and mediation steps of the Program.[8]  Defendant contends, without contradiction, that although Defendant suggested a mediator and inquired as to scheduling, Plaintiff declined to attend mediation.[9]  The second Complaint does not mention the Agreement or the Program, but alleges that after Plaintiff made a formal complaint to Defendant's human resources official and filed administrative agency complaints she was subjected to adverse employment actions, culminating in the termination of her employment on April 5, 2010.[10]

---

[5] Def.'s Ex. A-1 at 1-3 (Civ. A. No. 11-4596, Doc. No. 2-1).

[6] Def.'s Ex. A-1 at 4.

[7] Civ. A. No. 11-4596, Compl. ¶ 38.

[8] Civ. A. No. 11-4596, Compl. ¶¶ 39, 42.

[9] Strang Decl. ¶¶ 12-14 (Civ. A. No. 11-4596, Doc. No. 2-1, Ex. A).

[10] Civ. A. No. 12-727, Compl. ¶¶12-18.

**II.    STANDARD OF REVIEW**

Defendant moves to compel mediation and arbitration pursuant to the Federal Arbitration Act (the "FAA").[11] The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes."[12] Employment contracts, except for those regarding the employment of transportation workers, fall within the ambit of the FAA.[13] Under the statute, a provision in a contract requiring arbitration of disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[14] "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[15]

The FAA authorizes a federal court "to compel arbitration if a party to an arbitration agreement institutes an action that involves an arbitrable issue and one party to the agreement has failed to enter arbitration."[16] The court's role is not to consider the merits of the underlying dispute but to determine whether "a valid agreement to arbitrate exists between the parties," and whether "the specific dispute falls within the substantive scope of that agreement."[17]

In ruling on motions under the FAA, "[w]hen it appears from the face of a complaint, and documents relied upon in the complaint, that certain of its claims are subject to an enforceable

---

[11] 9 U.S.C. §§ 1-16.

[12] Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009).

[13] Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).

[14] 9 U.S.C. § 2.

[15] Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

[16] Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir. 1999).

[17] John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998) (internal quotation omitted).

arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. If the party opposing arbitration does not, in its complaint, allege 'enough fact[s] to raise a reasonable expectation that discovery will reveal' the clause to be unenforceable, the motion to compel arbitration should be granted."[18]

### III. DISCUSSION

There is no dispute that both parties signed the Agreement, or that the claims asserted in these cases are covered by the Agreement. Plaintiff acknowledges that she followed the initial steps of the Program with regard to her dispute with Defendant. Plaintiff argues, however, that under Pennsylvania law,[19] the terms of the Agreement are not sufficiently definite to be enforced, because the clause providing that arbitration must be commenced "within one year or within the applicable statute of limitations, whichever is longer" fails to specify what procedural rule applies in determining the applicable statute of limitations and is therefore ambiguous. Under Pennsylvania law, "[i]t is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous."[20] The Court concludes as a matter of law that this clause is not ambiguous; the intent of this provision is to give a party with a claim at least as much time to demand arbitration as the party otherwise would have to file a lawsuit.[21] Furthermore, even if

---

[18] Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)) (internal citation omitted) (alteration in original).

[19] As the Agreement specifies no applicable law (other than the FAA) and Plaintiff lives in and was employed by Defendant in Pennsylvania, Pennsylvania law governs interpretation of the contract. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., — U.S. —, 130 S. Ct. 1758, 1773 (2010) (holding that the interpretation of an arbitration agreement is generally a matter of state law).

[20] Tuthill v. Tuthill, 763 A.2d 417, 420 (Pa. Super. Ct. 2000).

[21] See Bucks Orthopaedic Surgery Associates, P.C. v. Ruth, 925 A.2d 868, 872 (Pa. Super. Ct. 2007) (citations omitted) ("Arbitration agreements are contracts and should be interpreted using contract principles. Unquestionably, the parties' intent as evinced by the words of an agreement is a paramount consideration in

the clause were ambiguous, the ambiguity would go only to the question of whether Plaintiff timely sought arbitration, not to the validity of the Agreement itself, and once the Court has determined that a valid agreement to arbitrate exists, questions "relating to the statute of limitations should be deferred to the arbitrator."[22]

Plaintiff also argues that the Agreement provides that either party may demand arbitration, and since neither party did so within one year or before Plaintiff filed suit, it is too late to do so now. The Court disagrees. Plaintiff, not Defendant, claims to be the aggrieved party. Defendant was under no obligation to commence an arbitration proceeding or file an action to compel arbitration in anticipation of the *possibility* of Plaintiff rejecting arbitration in favor of litigation. The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . ."[23] Plaintiff, who had previously followed the pre-arbitration steps of the Program, did not unequivocally fail or refuse to arbitrate until she filed these lawsuits, and Defendant then moved promptly to compel arbitration.[24]

Plaintiff is correct, however, in her argument that she cannot be compelled to mediate

---

construing a contract. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement.").

[22] Blair v. Scott Specialty Gases, 283 F.3d 595, 611 (3d Cir. 2002) (footnote and internal punctuation omitted).

[23] 9 U.S.C. § 4.

[24] See PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068 (3d Cir. 1995). Even if some earlier action other than litigation, such as the filing of administrative complaints, constituted a refusal to arbitrate, Defendant had four years to seek to compel arbitration. See id. at 1066 (holding that Pennsylvania's four-year statute of limitations for contract cases applies to an action to enforce an arbitration agreement under the FAA).

now that she is no longer employed by Defendant.  The Agreement states that "[t]his Agreement *to arbitrate* shall survive the termination of [Plaintiff's] employment."[25]  In addition, the FAA speaks only to arbitration, not to mediation or other forms of alternative dispute resolution. Thus, if Plaintiff chooses not to mediate, she will not be compelled to do so; however, Plaintiff did agree to arbitrate any employment disputes, and the Court will grant Defendant's motion to compel arbitration.

IV.     **CONCLUSION**

The motions to compel arbitration will be granted.  Because arbitration is required, any questions as to the dismissal of claims must be directed to the arbitrator.[26]  The cases will be consolidated and the consolidated case stayed pending arbitration.[27]  An appropriate order will be entered.

---

[25] Def.'s Ex. A-2 at 2 (emphasis added).

[26] See, e.g., Gay v. CreditInform, 511 F.3d 369, 386 (3d Cir. 2007) (citing cases).

[27] Lloyd v. HOVENSA, LLC, 369 F.3d 263, 269 (3d Cir. 2004).